(6 Misc. Rep. 368.)

### TANENBAUM et al. v. FEIST.

(Common Pleas of New York City and County, General Term.    January 2, 1894.)

CONTRACTS—INTERPRETATION BY ACTS OF PARTIES.
  Plaintiff having been employed to procure insurance for defendant, who agreed to pay the premiums on delivery of policies, sent "binders," to which defendant objected because of the amounts placed in certain companies, and plaintiff then promised to send policies as desired.  *Held,* that the agreement was construed by the acts of the parties as limiting the amounts to be placed in the specified companies.

Appeal from city court, general term.

Action by Moses Tanenbaum and another against Simon Feist. From a judgment of the general term of the city court (23 N. Y. Supp. 319) affirming a judgment entered on a verdict in favor of defendant, and an order denying a motion to set aside the verdict and for new trial, plaintiffs appeal.    Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Benno Loewy, for appellants.
Howe & Hummel, for respondent.

DALY, C. J.    By a contract in writing, made January 19, 1891, between the plaintiffs, who were insurance brokers, and the defendant, who was engaged in business at 57 Walker street, plaintiffs agreed to procure insurance on the stock, etc., in said premises for one year from January 20, 1891, at the rate of 60 cents for every $100 of insurance, regardless whether the plaintiffs paid a greater or lower rate to the companies.    The plaintiffs were to procure all insurance required by the defendant in any of the companies named in a schedule annexed to the agreement.    The defendant agreed during the period of the agreement not to insure except through the plaintiffs, and to make payment of the premiums on demand after

the delivery of policies or renewals. Immediately upon the execution of the contract the defendant required insurance to the amount of $20,500 on his stock, and plaintiffs sent him on the last day of January or the 1st of February "binders" of insurance from three of the companies named in the schedule. These companies, and the policies they were to issue, were, Mutual, $10,500; Armstrong, $5,000, and Fire Association, $5,000. There were two documents known as "binders;" one reciting that it was binding March 17, 1891, and the other February 13, 1891. Upon receipt of these papers the defendant sent for Mr. Bear, one of the plaintiffs, and said to him, "You sent me binders for $10,000 in the Mutual and $10,500 in the Armstrong." That those companies were both controlled by the same party, and that he refused to take more than $2,500 in each, or $5,000 in one; and Mr. Bear said they did not issue less than $5,000. Subsequently, on February 10th, plaintiffs wrote to defendant that they would send policies as desired at the end of the week; but on the 13th they sent the policies described in the binders, which defendant immediately returned, with the statement that, as plaintiffs had not heeded his orders in reference not to insure more than $2,500 in the Armstrong or Mutual Company, he asked them to cancel the contract, and to consider it void. This action was commenced by plaintiffs to recover $123, the premiums upon the three policies so rejected, upon a cause of action for money laid out and expended for defendant. The answer denied the allegations of the complaint, set up the special agreement of January 19th, and alleged that it was made upon the express understanding that the plaintiffs would not insure the defendant in either the Armstrong or Mutual Company in a sum in excess of $2,500, or $5,000 in any one of the said two companies, and that plaintiffs, in violation of that agreement, procured policies in said companies in the sum of $20,500. At the close of the case a verdict was ordered for the defendant, and from the judgment entered thereon the plaintiffs appeal. While defendant did not prove the defense set up, namely, that the agreement of January 19th was made upon any condition as to the limitation of the amount to be insured in any one company, it was nevertheless shown that he immediately objected to the proposed policies mentioned in the binders, and that he refused to insure more than $2,500 each in the Armstrong and Mutual Companies; and that the plaintiffs, so far from insisting upon the right to use their discretion in the matter, subsequently wrote to the defendant a letter, in which they promised to send the policies he desired. There is no dispute as to the fact of defendant's objection to the binders, for this was testified to by the defendant himself, called by plaintiffs as their witness; and there is no contradiction of his testimony. The plaintiffs rely upon the fact that he retained the binders, but the fact of such retention after an objection in which the plaintiffs apparently concurred is immaterial. The acts of the parties showed that they construed their own agreement as reserving to the defendant some discretion as to the amount of insurance to be covered by the policy of any one company, or that with respect to the policies in question there

was a new agreement to that effect; and when the plaintiffs, after the objection of the defendant was made known to them, promised to send policies as desired, it became their duty to do so as part of their agreement; and, as they failed to fulfill their promise, they had no cause of action. The defendant was not in default upon the contract, and could not be made liable either in an action upon the agreement or in assumpsit on the theory of a breach of the contract for moneys paid out and expended by the plaintiffs. The defendant was, therefore, entitled to a verdict, and the judgment and order appealed from must be affirmed, with costs. All concur.